UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALVADOR LUA,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>IAN MCNETT AND CITY OF SAN DIEGO,<br><br>　　　　　　　　　　Defendant. | Case No.:   23CV32-JAH(BLM)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL DISCOVERY**<br><br>**[ECF NO. 21]** |

Currently before the Court is Plaintiff's March 4, 2024 Motion to Compel Discovery [ECF No. 21-1 ("MTC")], Defendants' March 11, 2024 opposition to the motion [ECF No. 22 ("Oppo.")], and Plaintiff's March 18, 2024 Reply [ECF No. 23 ("Reply")].

## FACTUAL BACKGROUND

On January 6, 2023, Plaintiff filed a complaint pursuant to 42 U.S.C. § 1983.  ECF No. 1; see also MTC at 1.  Plaintiff filed a First Amended Complaint ("FAC") on February 12, 2024 alleging (1) violation of the Bane Act, Cal. Civ. Code § 52.1; (2) negligence; (3) liability under Monell v. Department of Social Services of New York, 436 U.S. 658 (1978); and (4) excessive force. ECF No. 18.  Specifically, Plaintiff alleges that on August 31, 2019, after suspecting him off unlocking electric scooters for two minors, Defendant McNett performed a leg sweep on Plaintiff that resulted in Plaintiff landing face first on the concrete and shattering his eye-socket, cheekbone, and mandible.  Id. at 1.  Plaintiff further alleges that Defendant McNett then tased him for twenty seconds and knocked him unconscious before sitting on top of Plaintiff and intentionally "ben[ding] his handcuffed wrists backwards" to the point where Plaintiff cried out

in pain.  Id. at 2, 5.  As a result, Plaintiff was admitted to USCD Medical Center and treated for a zygomaticomaxillary complex fracture that required ten or more follow-up appointments to fully treat.  Id. at 6.

Plaintiff later plead guilty to one count of misdemeanor resisting an officer, in violation of Penal Code section 69.  Id.  A San Diego Police Department Internal Affairs review from October 2022 concluded that Defendant McNett had not properly used his body camera and did not properly document his use of force related to this incident.  Id.  A July 2022 review sustained the allegation that Defendant McNett "used excessive force against Lua by applying force to him after he was already detained and in handcuffs." Id. at 7.

Finally, Plaintiff alleges that Defendant McNett has previously used unreasonable force on the job and that the San Diego Police Department was aware of this behavior and did nothing to stop it.  Id.  at 2.

## RELEVANT PROCEDURAL BACKGROUND

On November 17, 2023, Defendants served their Initial Disclosures.  ECF No. 21-2, Lodgment of Exhibits In Support of Motion to Compel at ("Lodgments") at Exhibit 1.

On December 12, 2023, Plaintiff served a Request For Production of Documents ("RFPs") on Defendant.  MTC at 2; see also Lodgments at Exhibit 2.  Defendants responded to Plaintiff's RFPs on January 19, 2024.  Id. at 2; see also Lodgments at Exhibit 3.  On January 22, 2024, Plaintiff requested a meet and confer with Defendants that was originally scheduled for January 26, 2024 and later moved to February 1, 2024.  Id. at 3; see also Lodgments at Exhibit 4.  On January 26, 2024, Defendants provided a privilege log.  Id. at 3.  After meeting and conferring, the parties continued to disagree about Internal Affairs reports related to Defendant McNett. Id.  Plaintiff sent Defendants a follow up email on February 6, 2024 with case law in support of his position and narrowed the scope of the request to "any records that pertain to the use of force or to honesty/dishonesty or McNett's willingness to comply with supervision (e.g. the instances in which he refuses to sign reprimands)."  Id.; see also Lodgments at Exhibit 4. Defendants did not respond to the email and Plaintiff sent another email on February 13, 2024. Id. at 4.  That same day Defendants responded that they had not yet had time to review those

issues and requested a February 22, 2024 meet and confer. Id. The parties met and conferred, but Defendants' position remained the same.

On February 26, 2024, counsel for Plaintiff, Alex Coolman, and counsel for Defendant, Elizabeth Atkins, jointly contacted the Court regarding a discovery dispute involving employment and training records and reports from Internal Affairs cases. In regard to the dispute, the Court issued an Order Setting Briefing Schedule. The parties timely filed the required briefing. MTC, Oppo., and Reply.

## **PROTECTIVE ORDER**

The Court notes that on November 15, 2023, the parties were ordered to "file a joint motion for a protective order, which includes the terms of their agreement for handling confidential documents and information, on or before December 20, 2023." ECF No. 15. The parties failed to do so, and no protective order has been entered in this case. See Docket. Accordingly, the parties are **ORDERED** to file a Joint Motion for Entry of Stipulated Protective Order by **April 8, 2024**. The parties are reminded to review Judge Major's Chambers Rules prior to filing the Joint Stipulation.

## **LEGAL STANDARD**

The scope of discovery under Federal Rules of Civil Procedure ("Fed. R. Civ. P.") is defined as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Typically, the relevance standard is broad in scope and "encompass[es] any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in a case." Doherty v. Comenity Capital Bank, c, at *2 (S.D. Cal. May 9, 2017). Relevance, however, is not without limits. Id. The 2015 amendment to Rule 26(b)

removed the phrase "reasonably calculated to lead to the discovery of admissible evidence" because it was often misconstrued to define the scope of discovery. Fed. R. Civ. P. 26(b)(1) advisory committee's notes (2015 amendment). Instead, to fall within the scope of discovery, the information must also be "proportional to the needs of the case," requiring lawyers to "size and shape their discovery requests to the requisites of a case" while "eliminat[ing] unnecessary or wasteful discovery." Fed. Civ. R. P. 26(b)(1); Cancino Castellar v. McAleenan, 2020 WL 1332485, at *4 (S.D. Cal Mar. 23, 2020) (quoting Roberts v. Clark Cty. Sch. Dist., 312 F.R.D. 594, 603 (D. Nev. 2016)).

District courts have broad discretion to determine relevancy for discovery purposes. D.M. v. County of Merced, 2022 WL 229865, at * 2 (E.D. Cal. Jan. 26, 2022) (citing Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002) and Surfvivor Media v. Survivor Prods., 406 F.3d 625, 635 (9th Cir. 2005)). District courts also have broad discretion to limit discovery to prevent its abuse. See Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)"). Further, "[w]hen analyzing the proportionality of a party's discovery requests, a court should consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Cancino, 2020 WL 1332485, at *4 (citing Fed. R. Civ. P. 26(b)(1)).

Fed. Civ. R. P. 34 provides that a party may serve on another a request for production of documents, electronically stored information, or tangible things within the scope of Fed. Civ. R. P. 26(b). Fed. Civ. R. P. 34(a). Where a party fails to produce documents requested under Rule 34, the party propounding the request for production of documents may move to compel discovery. See Fed. R. Civ. P. 37(a). "The party seeking to compel discovery has the burden of establishing that its requests satisfy the relevancy requirements of Rule 26(b)(1). Thereafter,

the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining, or supporting its objections." Williams v. County of San Diego, 2019 WL 2330227, at *3 (citing Bryant v. Ochoa, No. 7cv200 JM (PCL), 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009) (internal quotations omitted).

## **PLAINTIFF'S POSITION**

Plaintiff argues that the motion is timely since Defendants did not confirm their legal position until February 22, 2024 and that regardless, Plaintiff made diligent, good faith efforts to resolve the dispute informally and accommodate Defendants' schedule which excuses any delay. MTC at 4-7. Plaintiff also argues that the sought after Internal Affairs reports are relevant and discoverable especially under a Monell theory of liability. Id. at 7-10. Plaintiff notes that Defendants have failed to provide a specific basis for withholding the reports and instead provide improper boilerplate objections. Id. Finally, Plaintiff argues that Defendant McNett's personnel files are relevant to assessing Defendant McNett's credibility, judgment, and interactions with his supervisors for purposes of Plaintiff's Monell claim. Id. at 10-11.

## **DEFENDANTS' POSITION**

Defendants contend that Plaintiff's motion is untimely and should not be considered by the Court. Oppo. at 2-4. Defendants also contend that Plaintiff's request for Internal Affairs reports is overbroad and violates the privacy rights of Defendant McNett and unrelated third parties. Id. at 4-7. Specifically, any Internal Affairs reports that (1) do not contain allegations of use of force, (2) contain unsustained, unfounded, or exonerated allegations, and (3) address actions after the subject incident, are not relevant. Id. at 5-7. Finally, Defendants contend that Plaintiff's request for personnel records is overbroad, irrelevant, and in violation of Defendant McNett's privacy rights. Id. at 8-9. Defendants note that at the Court's request, they are willing to provide the Court with the Internal Affairs reports at issue for *in camera* review. Id.

## **PLAINTIFF'S REPLY**

Plaintiff replies that the motion should be considered timely as any delay was due to defense counsel's request for additional time to meet and confer after Plaintiff's counsel informed defense counsel that he was going to contact the Court on February 14, 2024 regarding the

discovery dispute. Reply at 2. Plaintiff's counsel sent this email after defense counsel failed to respond to Plaintiff's counsel's email of February 6, 2024. Id. Plaintiff also replies that Defendants' justification for non-disclosure of Internal Affairs files is vague and "inconsistent with what the publicly disclosed portions of those files show." Id. at 4. Finally, Plaintiff replies that Defendants' justification for non-disclosure of personnel files is vague and boilerplate. Id. at 8-9.

## DISCUSSION

A. Timeliness

As an initial matter, Defendants argue that Plaintiff's motion should be denied because it was filed more than 30 days after the event giving rise to the dispute in violation of this Court's Chamber Rules. Oppo. at 2-4.

The Scheduling Order Regulating Discovery and Other Pretrial Proceedings states that:

> All discovery motions must be filed within 30 days of the service of an objection, answer or response which becomes the subject of dispute or the passage of a discovery due date without response or production, and only after counsel have met and conferred and have reached impasse with regard to the particular issue. The Court's procedures for resolving discovery disputes are set forth in Magistrate Judge Barbara L. Major's Civil Chambers Rules, which are posted on the Court's website. **A failure to comply in this regard will result in a waiver of a party's discovery issue. Absent an order of the court, no stipulation continuing or altering this requirement will be recognized by the court**.

ECF No. 15 at 2 (emphasis in original). Section V E of Judge Major's Chambers Rules states:

> All discovery motions must be filed within 30 days of the event giving rise to the dispute and only after counsel have met and conferred and communicated with the Court as set forth above. The event giving rise to the dispute is NOT the date on which counsel reach an impasse in their meet and confer efforts. For written discovery, the event giving rise to the dispute is the service of the initial response or production of documents, or the passage of the due date without a response or document production. For oral discovery, the event giving rise to the dispute is the receipt of the transcript from the Court reporter of the

affected portion of the deposition.[1]

Here, Plaintiff served discovery on December 12, 2023 and Defendants responded on January 19, 2024.  Thirty days from January 19, 2024 was February 19, 2024.  Plaintiff requested a meet and confer on January 22, 2024.  MTC at 2.  The parties met and conferred on February 1, 2024, Plaintiff followed up via email on February 6, 2024, and on February 13, 2024, Defense counsel informed Plaintiff that she had "not had a chance to even look into these issues yet."  Id. at 3-4.  The parties scheduled a follow up meet and confer for February 22, 2024 and later contacted the Court on February 26, 2024.  Id.  While Plaintiff's counsel should have reached out to the Court when Defense counsel failed to respond to his February 6, 2024 efforts to schedule a second meet and confer[2], the Court understands Plaintiff's counsel desire to "thoroughly meet and confer and [] make every effort to resolve [the] disputes without the necessity of court intervention" in accordance with Judge Major's Chambers Rules which was difficult to do when he did not receive a response to his second attempt to meet and confer and defense counsel had not reviewed any of Plaintiff's counsel's February 6, 2024 email or the legal issues addressed therein.  In light of these facts, the Court declines to deny Plaintiff's motion on this basis and will consider the arguments on the merits.  The Court reminds the parties to respond to one another in a timely fashion and to review and comply with this Court's Chambers Rules.

B. Internal Affairs Reports

1. Right to Privacy

Defendants contend that the requested documents violate Defendant McNett's privacy rights and violate the rights of unrelated third parties as the Internal Affairs documents contain personal information about officers under investigation, witnesses, and third-party complainants.

---

[1] Available at https://www.casd.uscourts.gov/judges/major/docs/Chambers%20Rules%20Civil.pdf

[2] See Judge Major's Chambers Rules ("[i]f a party or lawyer fails to respond to opposing counsel's request to meet and confer for more than 72 hours, counsel may contact chambers and request a telephonic conference with the clerk assigned to the case or an appropriate briefing schedule.").  Available at https://www.casd.uscourts.gov/judges/major/docs/Chambers%20Rules%20Civil.pdf

Oppo. at 5-6. Defendants note that "[e]ven with the protective order, there would be a substantial risk of harm to that complainant's privacy rights and could chill future complainants from the type of honesty and vulnerability necessary when investigating claims against Officers." Id. at 6. Defendants contend that the five Internal Affairs reports that do not contain a use of force allegation should not be disclosed in the interest of protecting the privacy rights of Defendant McNett and other third parties. Id. Defendants request that if the Court orders disclosure of the documents, "that all names, contact information, and other identifying information of non-Defendants officers and third parties be redacted." Id.

Federal courts recognize a constitutionally based right of privacy that may be asserted in response to discovery requests. Soto v. City of Concord, 162 F.R.D. 603, 616 (N.D. Cal. July 17, 1995); Medina, 2014 WL 4793026, at *4 (S.D. Cal. Sept. 25, 2014). In resolving privacy objections, courts balance the need for the requested information against the asserted privacy right. Id. "In the context of the disclosure of police files, courts have recognized that privacy rights are not inconsequential." Soto, 162 F.R.D. at 616; Kelly v. City of San Jose, 114 F.R.D. 653, 660 (N.D. Cal. Feb. 26, 1987). "However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments." Soto, 162 F.R.D. at 616. "Current case law suggests the privacy interests police officers have in their personnel files do not outweigh plaintiff's interests in civil rights cases." Dowell v. Griffin, 275 F.R.D. 613, 617 (S.D. Cal. Aug. 17, 2011) (citing Soto, 162 F.R.D. at 617; Hampton v. City of San Diego, 147 F.R.D. 227, 230 (S.D. Cal. 1993); Miller v. Pancucci, 141 F.R.D. 292 (C.D. Cal. 1992)). Further, privacy rights can be adequately protected by a "tightly drawn" protective order. See Kelly, 114 F.R.D. at 662, 666, 671; Hampton, 147 F.R.D. at 231.

Here, Defendants' privacy interests do not outweigh Plaintiff's interest in his civil rights case. While Defendants raise some valid concerns, they do not explain why a well thought out protective order in connection with redactions of personal identifying information is insufficient for protecting their privacy interests or would result in a "substantial risk of harm." See Lamon v. Adams, 2010 WL 4513405, at *3-4 (E.D. Cal. Nov. 2, 2010) (ordering redaction of the names of the inmates who filed grievances against correctional officer before documents were provided

to plaintiff); see also Smith v. Kiesz, 2013 WL 1338927, at *2 (E.D. Cal., Apr. 3, 2013) (ordering defendant to produce documents from defendant's personnel file and noting that any documents disclosed were subject to a protective order that required defense counsel "to redact any and all identifying personal information which might pose a security risk if released, including, but not limited to, the defendant's home addresses, social security numbers, telephone numbers, etc."); Eusse v. Vitela, 2015 WL 9008634, at *4 (S.D. Cal. Dec. 14, 2015) (noting defendants' privacy concerns and ordering that "the names and identifying information of the individuals who made the complaints, as well as other officers who were not involved in the incident, may be redacted."); Thompson v. Morales, 2008 WL 413757, at *1 (E.D. Cal., Feb. 13, 2008) ("Privacy concerns, if any, may be addressed by redaction of names, CDC numbers, and other identifying information, should the defendants be required to produce documents responsive to this request."). Accordingly, Defendants' request that the Internal Affairs reports be withheld on the basis of a privacy concern is **DENIED**.

2. Relevance

Plaintiff argues that the Internal Affairs records are relevant to Defendant McNett's "own judgment and credibility as a police officer, to his history of using force, and to the City's supervision of Office McNett" all of which go to Monell liability. MTC at 7.

Defendants identify ten Internal Affairs reports and divide them into three groups: reports containing no use of force (5), reports containing unsustained, unfounded, or exonerated use of force (4), and an unrelated post-incident report (1). Oppo. at 4. Defendants contend that the requested documents are irrelevant to Plaintiff's claims. Id.

Plaintiff replies that at least the first category presented by Defendants does not align with the publicly disclosed redacted portions of the files which identify a sustained use of excessive force allegation against Defendant McNett, thereby calling into question Defendants' categorization and assessment of the Internal Affairs reports. Reply at 4-5. Plaintiff argues that Defendants' assertions about the Reports "should not be taken at face value." Id. at .5

The Court finds that the Internal Affairs reports are relevant. First, the Court agrees with Plaintiff that Internal Affairs reports that do not address use of force may still be relevant to

other issues at play in this case. Second, Defendants themselves admit that the four reports that comprise their second category of documents are relevant, they just believe that Defendants' privileges outweigh the relevancy since "none of these reports found any wrongdoing by Officer McNett." Oppo. at 6. Finally, Defendants do not provide specific information about the last Internal Affairs report, only stating that it "involves an incident that is not in any way similar to the incident in this case" and "was years after the subject incident date." Oppo. at 7. Defendants do not say if the report concerns the use of force or an allegation that goes to Defendants' credibility or other issues present in this case, if the allegation was sustained, or exactly when the incident occurred. The conduct at issue in the current case occurred in August 2019, less than five years ago so Defendants' statement that the incident at issue in the Internal Affairs complaint was "years after" August 2019 does not support their argument that it is irrelevant. Accordingly, the Court finds that all of the identified Internal Affairs reports are relevant as defined in Fed. R. Civ. P. 26.

   3. <u>Official Information Privilege</u>

  Defendants contend that the requested documents are also protected by the Official Information Privilege. Oppo. at 4. "Federal common law recognizes a qualified privilege for official information." <u>Sanchez v. City of Santa Ana</u>, 936 F.2d 1027, 1033 (9th Cir. 1990) (citing <u>Kerr v. United States Dist. Ct. for N.D. Cal.</u>, 511 F.2d 192, 198 (9th Cir. 1975), aff'd, 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976)). The party asserting the privilege has the initial burden of proving the applicability of the privilege. <u>See</u> <u>Kelly</u>, 114 F.R.D. at 669–71; <u>see also</u> <u>Hampton</u>, 147 F.R.D. at 230 ("Through this opinion, this court is hereby joining the Northern District's and Central District's procedures outlined in <u>Kelly v. City of San Jose</u>, 114 F.R.D. 653 (N.D. Cal. 1987) and <u>Miller v. Pancucci</u>, 141 F.R.D. 292 (C.D. Cal. 1992) for invoking the official information privilege"); <u>Stewart v. City of San Diego</u>, 2010 WL 4909630, at *1 (S.D. Cal. 2010) (applying <u>Kelly</u>). A party seeking to invoke the official information privilege in response to a discovery request must serve a timely discovery response specifically identifying the official information privilege as a basis for its objection. <u>Kelly</u>, 114 F.R.D. at 669. The objection must be accompanied by a declaration or affidavit "from a responsible official within

the agency who has personal knowledge of the principal matters to be attested to in the affidavit or declaration." Id.  The affidavit or declaration must include:

> (1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality (if the agency has shared some or all of the material with other governmental agencies it must disclose their identity and describe the circumstances surrounding the disclosure, including steps taken to assure preservation of the confidentiality of the material), (2) a statement that the official has personally reviewed the material in question, (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer, (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, (5) and a projection of how much harm would be done to the threatened interests if the disclosure were made.

Id. at 670.  "If the non-disclosing party does not meet this initial burden of establishing cause to apply the privilege, the court must order disclosure of the documents; if the party meets this initial burden, the court generally conducts an *in camera* review of the material and balance each party's interests." Bryant v. Armstrong, 285 F.R.D. 596, 605 (S.D. Cal. 2012).

The balancing test requires that "courts must weigh the potential benefits of disclosure against the potential disadvantages." Sanchez, 936 F.2d at 1033-34.  The Kelly court provided a non-exhaustive list of factors (taken from Frankenhauser v. Rizzo, 59 F.R.D. 339 (E.D. Pa. 1973)) that may be considered when engaging in this weighing process: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the

information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case. Kelly, 114 F.R.D. at 663. In making this determination, courts must conduct "a situation specific analysis of the factors made relevant by the request in issue and the objection to it." Id. In civil rights cases against police departments, the balancing test should be "moderately pre-weighted in favor of disclosure." Soto, 162 F.R.D. at 613 (quoting Kelly, 114 F.R.D. at 661).

Defendants have not satisfied their initial burden of proving the applicability of the privilege. Defendants provided the Declaration of Captain Jeffrey Peterson, supervisor of the Internal Affairs Unit of the San Diego Police Department. See ECF No. 22-1, Declaration of Jeffrey Peterson ("Peterson Decl."). While Captain Peterson declares that he supervises the Internal Affairs Unit and describes the general practices of the unit regarding generating, collecting, and maintaining records relating to allegations of officer misconduct, he does not provide any specific information as to this case or the documents/information requested in this case. Id. Captain Peterson also fails to (1) declare that he personally reviewed the materials Plaintiff seeks, (2) provide "a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests[,]" and (3) provide "a projection of how much harm would be done to the threatened interests if the disclosure were made." Id.

Because Defendants fail to meet their burden, the Court need not conduct an *in camera* review of the document or address the Kelly balancing test. See Hoyt v. Valdovinos, 2021 WL 2550080, at *5 (S.D. Cal., June 22, 2021) (citing Eusse v. Vitela, 2015 WL 1013774 (S.D. Cal. Dec. 14, 2015) (declining to apply the balancing test and requiring disclosure when the declaration did not meet the second and fourth threshold Kelly factors) and Bryant v. Armstrong, 285 F.R.D. 596, 605 (S.D. Cal. 2012) (declining to apply the balancing test and requiring disclosure when the declaration did not meet the threshold showing)). Accordingly, the Court **OVERRULES** Defendants' objections based on Official Information Privilege.

///

///

### 4. Deliberative Process Privilege

Defendants contend that the requested documents are also protected by the Deliberative Process Privilege. Oppo. at 4. The deliberative process privilege aims to "shield certain intra-agency communications from disclosure" and thus "allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." Lahr v. National Trans. Safety Bd., 569 F.3d 964, 979 (9th Cir. 2009). A two-part test is used to determine if the privilege has been properly invoked. See Ingrande v. AutoZoners, LLC, 2022 WL 788672, at *2 (S.D. Cal., Mar. 15, 2022) (citing Lahr, 569 F.3d at 982). The party opposing discovery must show that the documents at issue are pre-decisional and deliberative. Id. Pre-decisional means that the document "is prepared [ ] to assist an agency decisionmaker in arriving at his decision and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Id. (quoting Assembly of California v. United States Dep't of Commerce, 968 F.2d 916, 920 (9th Cir. 1992)). Deliberative means that "the disclosure of the materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." Id. (quoting Lahr, 569 F.3d at 982).

> The deliberative process privilege is a qualified one, and [a] litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure. Warner, 742 F.2d at 1161. Among the factors to be considered in making this determination are: 1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions. Id. The Court may also consider "(5) the interest of the litigant, and ultimately society, in accurate judicial fact finding, (6) the seriousness of the litigation and the issues involved, (7) the presence of issues concerning alleged governmental misconduct, and (8) the federal interest in the enforcement of federal law.

Estate of Serna v. County of San Diego, 2023 WL 7477321, at *9 (S.D. Cal., Aug. 30, 2023) (quoting N. Pacifica, LLC v. City of Pacifica, 274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003) (internal citations omitted)).

"Courts have held that the deliberative process privilege generally does not apply in civil-rights lawsuits to protect from disclosure internal-affairs documents, investigations, and records of witness/police officer statements, as these routinely generated communications are not designed to contribute to the formulation of important public policy." Shiflett by and through Davenport v. City of San Leandro, 2023 WL 4551077, at *5 (N.D. Cal., July 13, 2023) (citing Soto, 162 F.R.D. at 612–13) ("The 'deliberative process' privilege, closely related to the self-critical analysis privilege, is also inappropriate for use in civil rights cases against police departments.")). Defendants cite no authority nor provide any explanation in support of applying the Deliberative Process Privilege. See Oppo. Accordingly, the Court **OVERRULES** Defendants' objections based on Deliberative Process Privilege. See Pittman v. Cnty. of San Diego, 2010 WL 3733867, at *3 (S.D. Cal. Sept. 17, 2010), reconsidered on other grounds, 2010 WL 4570252 (S.D. Cal. Nov. 3, 2010). ("The deliberative process privilege does not apply to the requested documentation because the internal affairs investigation does not reflect discussion among those responsible for governmental decision-making. Rather, the documentation includes Plaintiffs' complaints, the names of the deputies involved, witnesses identified, along with findings and conclusions regarding the specific incident between Plaintiffs and the deputies.")

C. Personnel Files

Plaintiff argues that Defendant McNett's personnel records are relevant "because they speak to Officer McNett's judgment and credibility as a police officer, to his history of using force, and to the City's supervision of him." MTC at 10. Plaintiff notes that despite his attempt to narrow the request related to personnel files, Defendants have not provided any personnel records. Id. Plaintiff further notes that Defendants' privilege log states "privacy" or "privacy – not subject incident" for all of the requested personnel records which is an improper response and should result in the waiver of Defendants' claim of privilege. Id. at 10-11.

1    Defendants explain that Defendant McNett's personnel files contain more than 300 pages
2    and include information such as school records, home addresses, and banking information.
3    Oppo. at 8. Defendants also assert that the records date back to 2014 and therefore are
4    "overbroad as to time." Id. Defendants argue that Plaintiff's request is overbroad, seeks
5    irrelevant information, includes records that are protected by California Penal Code section 832
6    and that Plaintiff's need for the records does not outweigh Defendants McNett's state privacy
7    rights. Id. at 8-9. Defendants also note that some of the records regarding "discipline of the
8    subject incident" have been disclosed. Id. at 8.
9    Police personnel records are "relevant and discoverable" in § 1983 cases. See Green v. Baca,
10   226 F.R.D. 624, 644 (C.D. Cal. 2005) (citations omitted); Soto, 162 F.R.D. at 614-15; Medina,
11   2014 WL 4793026, at *6. "Items typically found in personnel files, such as records concerning
12   training and performance, have been held to be relevant on the issues of credibility, notice to
13   the employer, ratification by the employer, motive of the officers and malicious intent." Myles
14   v. County of San Diego, 2016 WL 2343914, at *14 (S.D. Cal., May 4, 2016) (citing Kassab v.
15   San Diego Police Dep't, 2008 U.S. Dist. LEXIS 72619, at *6-7 (S.D. Cal. Sept. 19, 2008) and
16   Soto, 162 F.R.D. at 613). Further, because performance evaluations are conducted on a routine
17   basis, "the absence of materials documenting officer misconduct would tend to suggest the
18   officer in question performed adequately and in accord with department policies." Stewart, 2010
19   WL 4909630, at *2.
20       1. Relevancy
21   Plaintiff argues that Defendant McNett's personnel files are relevant as they speak to his
22   judgment and credibility as a police officer, his history of using force, and the City's supervision
23   of him. MTC at 10. Defendants contend that Plaintiff's request for personnel files is overbroad
24   and seeks irrelevant information. Oppo. at 7-9.
25   The Court finds that the personnel files contain relevant information and that the request
26   which Defendants state encompasses three hundred plus documents is proportional to the needs
27   of the case. The Court acknowledges that the files also may contain irrelevant information, but
28   Defendants provide no authority or justification for redacting portions of the files or paragraphs

of a document because they contain irrelevant information. See United States Aviation Underwriters Inc. v. Aerospike Iron, LLC, 2023 WL 2414265, at *2 (S.D. Cal., Mar. 8, 2023) ("there is no legal basis to redact documents for relevancy concerns") (citing Caccamise v. Credit One Bank, N.A., 2019 WL 1900908, *5 (S.D. Cal., Apr. 26, 2019) ("Defendant is not permitted to redact responsive documents for relevancy purposes"); Hill v. Asset Acceptance, LLC, 2014 WL 3014945 (S.D. Cal., July 3, 2014) (ordering defendant to remove all redactions unrelated to privilege); Bartholomew v. Avalon Capital Group, Inc., 278 F.R.D. 441 (D. Minn. 2011) ("Redaction is an inappropriate tool for excluding alleged irrelevant information from documents that are otherwise responsive to a discovery request"); Samantha B. v. Lexington Ins. Co., 2021 WL 8531694, at *2 (C.D. Cal., Aug. 17, 2021) ("to the extent any portions have been redacted solely because Defendants believe they are not relevant to this lawsuit,[ ] 'courts frown upon the practice of redacting irrelevant information from documents based on one party's unilateral assessment of relevance.'") (quoting Shenwick v. Twitter, Inc., 2018 WL 833085, at *3 (C.D. Cal. Feb. 7, 2018)); and Doe v. Trump, 329 F.R.D. 262, 275-76 (W.D. Wash. Dec. 20, 2018) ("redaction is generally an inappropriate tool for excluding information that a party considers to be irrelevant or non-responsive from documents that are otherwise responsive to a discovery request").

The Court **OVERRULES** Defendants' objection as to the time frame of the request. The incident occurred in 2019 and Defendants state that the records date back to 2014. The Court finds that a time period of approximately five years prior to the incident is appropriate in this case. See Rodriguez v. Knight, 2023 WL 3570612, at *3 (E.D. Cal., May 19, 2023) (noting that "[o]ther courts have limited the temporal scope of discovery of personnel files for similar claims (excessive force use of force; failure to protect; and conspiracy to violate Plaintiff's rights during the prison disciplinary process) to five years" and "impos[ing] a time limit of five years preceding the earliest incident alleged") (citing Wheeler v. Alison, 2015 WL 269148 * 3 (E.D. Cal. Jan. 21, 2015); Lavenant v. City of Palm Springs, 2019, WL 6139114 * 4 (C.D. Cal. Aug. 6, 2019); Hayslett v. City of San Diego, 2014 WL 1154314 * 4 (S.D. Cal. March 21, 2014); and Lallemand v. Cnty. of Los Angeles, 2018 WL 6136814, at *2 (C.D. Cal. Jan. 12, 2018) (compelling discovery

after Plaintiff limited the scope of his request to five years).  As discussed below, the Court will allow Defendants to redact personal identifying information.

### 2. Right to Privacy

Defendants objected to the request for Defendant McNett's personnel files on privacy grounds.  Oppo. at 8.

For the same reason the Court overruled Defendants' privacy objections to Plaintiff's requests for Internal Affairs documents, the Court **OVERRULES** Defendants' privacy objections to producing Defendant McNett's personnel files.  Defendants have not shown that the files cannot be safely produced pursuant to a protective order with the redaction of personal identifying information such as social security numbers, bank account information, gun serial numbers, and addresses.  Additionally, Defendants' privacy concerns do not outweigh Plaintiff's need for the requested information.

### 3. California Penal Code Section 832.7

Defendants also rely on California Penal Code § 832.7 to argue that the requested documents are privileged and not subject to discovery.  Oppo. at 8; Peterson Decl. at ¶ 6 (claiming personnel files "contain confidential, personal information about the officer" and that releasing the information could "jeopardize the safety of the officer and their family").

California Penal Code § 832.7 states that "the personnel records of peace officers and custodial officers and records maintained by any state or local agency pursuant to Section 832.5, or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding." "Federal courts, however, have found that § 832.7 is not applicable in evaluating discovery disputes in 42 U.S.C. § 1983 claims." Vargas v. County of Los Angeles, 2020 WL 4032671, at *4 (C.D. Cal., May 11, 2020) (quoting Anderson v. City of Rialto, 2017 WL 10562686, at *3 (C.D. Cal. June 28, 2017) (electing to "not apply California Penal Code § 832.7 to its analysis of this matter") (citing Green, 226 F.R.D. at 643-44; Miller, 141 F.R.D. at 298-99 (finding California rules for discovery and privileges, including California Evidence Code § 1043, referenced in § 832.7 and other sections of the California Penal Code, to be "fundamentally inconsistent" with federal law and the liberal federal policy on discovery)); see also Medina, 2014

WL 4793026, at *7 ("[t]o the extent the Defendant relies on the privilege set forth in California Penal Code section 832.7, federal courts do not recognize section 832.7 as relevant to evaluating discovery disputes in 42 U.S.C. § 1983 cases.").  Defendants have not cited any federal law to support their position that the California statutes protect the documents from disclosure in a federal civil rights suit.  See Oppo. at 7-9.  Accordingly, Defendants' objection to producing Defendant McNett's personnel files on the basis of privilege pursuant to section 832.7 is **OVERRULED**.

## CONCLUSION

Plaintiff's motion to compel is **GRANTED**.  The parties must file a Joint Motion for Entry of Stipulated Protective Order by **April 8, 2024**.  Defendants must produce the requested Internal Affairs documents and Defendant McNett's personnel files by **April 15, 2024**.  Defendants may redact personal identifying information.

**IT IS SO ORDERED.**

Dated:  3/29/2024

Hon. Barbara L. Major
United States Magistrate Judge